**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PROGRESSIVE HEALTH & REHABILITATION, Ltd., an Illinois corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Progressive Health & Rehabilitation ("Progressive Health") brings this action against the proper legal defendant, Robert F. Kennedy, Jr., in his official capacity as Secretary of Health and Human Services ("Defendant" or "Secretary"), and requests judicial review of and relief from an erroneous decision of the Medicare Appeals Council (the "Appeals Council"), as follows:

**Parties**

1.      Progressive Health was an Illinois corporation duly authorized to conduct business in Cook County, Illinois and a Medicare participating provider. Progressive Health has the capacity to sue, pursuant to Fed. R. Civ. P. 17(b)(2), because a corporation's capacity is determined by the law of the state under which it was organized. Progressive Health was organized pursuant to the Illinois Business Corporation Act of 1983, as codified in the Illinois Compiled Statutes ("ILCS"), which states, "(a) Dissolution of a corporation terminates its corporate existence and a dissolved corporation shall not thereafter carry on any business *except* that necessary to wind up and liquidate

3668074.2

its business and affairs, including: (1) Collecting its assets," *see* 805 ILCS 5/12.30(a)(1)(emphasis added), and "(c) Dissolution of a corporation does *not*: (4) Prevent suit by or against the corporation in its corporate name," *see* 805 ILCS 5/12.30(c)(4)(emphasis added).

2. Defendant is sued in his official capacity as the Secretary of the U.S. Department of Health and Human Services[1] and is the federal officer responsible for the administration of the Medicare program pursuant to the Social Security Act. Secretary Robert F. Kennedy, Jr., in his official capacity, is the proper defendant pursuant to 42 C.F.R. § 405.1136(d)(1).

### Jurisdiction

3. The Court has jurisdiction to review Progressive Health's administrative appeal under Title XVIII of the Social Security Act, codified at 42 U.S.C. §§ 1395 *et seq.*, 42 U.S.C. § 405(g) as applied to Medicare appeals, and 42 C.F.R. § 405.1136 regarding judicial review of decisions of the Appeals Council.[2] *See Texas v. Sec'y*, No. 5:23-CV-136-RWS-JBB, 2025 U.S. Dist. LEXIS 59830, at * 10 (E.D. Tex. March 31, 2025) ("Judicial review of such final decisions lies with this Court pursuant to 42 U.S.C. § 1395ff(b)(1)(A), which incorporates 42 U.S.C. § 405(g) and allows for judicial review of a final decision of the Secretary with respect to Medicare benefits.").

---

[1] The U.S. Department of Health and Human Services is hereafter referred to by its common acronym— "HHS."

[2] 42 U.S.C. § 1395ii purportedly makes 42 U.S.C. § 405(h) "apply with respect to this title to the same extent as they are applicable with respect to title II , except that, in applying such provisions with respect to this title, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively." *See* 42 U.S.C.S. § 1395ii; *see also Social Security Act §1872*, THE UNITED STATES SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/OP_Home/ssact/title18/1872.htm (last visited July 1, 2026).

3668074.2

4. The amount in controversy is estimated to be $2,709,265.00, according to the pending overpayment demand, which greatly exceeds the amount in controversy required for judicial review of $1,900.00.

5. Notwithstanding 42 U.S.C. § 405(h), which, *inter alia*, states, "No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28...to recover on any claim arising under this title,"[3] Progressive Health submits that Congress cannot limit by legislation the Court's ability to review the constitutionality[4] of an administrative action, nor can an administrative agency itself. Progressive Health also maintains that whether under 42 U.S.C. §§ 1395 *et seq.* and 42 U.S.C. § 405(g) as applied to Medicare appeals cases, pursuant to the APA, 5 U.S.C. § 706(2),[5] or as a federal question pursuant to 28 U.S.C. § 1331, the Court has the power to review an Appeals Council order and its constitutionality. *See Sinking Fund Cases*, 99 U.S. 700, 718-719 (1879) (The United States is "equally with the States…prohibited from depriving persons or *corporations* of property without due process of law.") (emphasis added); *Den ex dem. Murray v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 276 (1856) (The *fifth amendment* "*is a restraint on* the legislative as well as on *the executive* and judicial *powers of the government*, and cannot be so construed as to leave congress free to make any process 'due process of law,' by its mere will." (emphasis added)).

---

[3] *See* 42 U.S.C. § 405(h); *see also Social Security Act § 205*, THE UNITED STATES SOCIAL SECURITY ADMINISTRATION, https://www.ssa.gov/OP_Home/ssact/title02/0205.htm (last visited July 1, 2026).

[4] *See, e.g.*, 28 U.S.C. § 1331 ("The district courts *shall* have original jurisdiction of *all* civil actions arising under the Constitution, laws, or treaties of the United States.") (emphasis added).

[5] The "reviewing court *shall* hold unlawful and set aside agency action, findings, and conclusions found to be (B) contrary to constitutional right…."(emphasis added).

3668074.2

**Venue**

6.     Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division pursuant to 42 C.F.R. 405.1136(b) because the Northern District of Illinois is the judicial district in which Progressive Health is deemed to have resided and had its principal place of business.

**The Procedural History and Facts Demonstrate Error at Each Level of Appeal Including by the Appeals Council and the Exhaustion of Administrative Remedies by Progressive Health.**

7.     Progressive Health was a Medicare participating provider.

8.     At issue in this matter are charges billed to Medicare for medically necessary GenVisc 850 and Hyalgan injections and related services that Progressive Health provided to eight (8) Medicare beneficiaries between August 23, 2017 and March 26, 2020.

9.     The costs associated with the treatment provided by Progressive Health to the Medicare beneficiaries were initially paid.

10.     However, CoventBridge (USA) Inc. ("CoventBridge"), a Unified Program Integrity Contractor ("UPIC"), conducted a post-payment review and determined that there was allegedly an overpayment to Progressive Health, which was then extrapolated to a pending demand amount of $2,716,056.33. Ex. A: October 21, 2021 Post-Payment Review Results and Overpayment Determination Letter from CoventBridge, at pg. 1.[6]

11.      CoventBridge alleged that it had conducted a "medical review"[7] of a sample of claims with dates of service from July 14, 2017 through November 19, 2020. Ex. A, at pg. 5.

---

[6] The exhibits to this Complaint for Judicial Review are identified, in sequence, as **Ex. A through Ex. M**, and, in accordance with Fed. R. Civ. P. 10(c), each exhibit to this pleading "is a part of the pleading for all purposes."

[7] In reality, as Progressive would later learn, this "medical review" was actually conducted by a nurse reviewer, not a physician, so it could not be, and was not, actually a "medical review."

4

12. CoventBridge's primary allegations from its medical review were that (1) the services were not reasonable and necessary; (2) the required elements for the services were not documented; (3) and services were not rendered as billed. CoventBridge also alleged that (4) payments should not have been made for services related to non-covered/denied primary services. Ex. A, at pg. 8.

13. CoventBridge also alleged a high or sustained level of payment error during the time period July 3, 2017 through April 14, 2021 sufficient to allow for statistical extrapolation pursuant to 42 C.F.R. § 1395ddd(f)(3). Ex. A.

14. National Government Services, Inc. ("NGS"), a Medicare Administrative Contractor ("MAC"), issued a demand letter on December 2, 2021 for $2,709,265. Ex. B: December 2, 2021 Overpayment Demand Letter from NGS.

15. Progressive Health appealed the overpayment determination made by CoventBridge in accordance with 42 C.F.R. § 405.940 to NGS. Ex. C: March 31, 2022 Redetermination Request Letter.

16. NGS issued an "unfavorable" redetermination decision and concurred with CoventBridge's findings. Ex. D: September 20, 2022 Medicare Appeal Decision from NGS.

17. Progressive Health appealed the redetermination, in accordance with 42 C.F.R. § 405.960, to C2C Innovation Solutions, Inc. ("C2C"), a Qualified Independent Contractor ("QIC"). Ex. E: February 27, 2023 Reconsideration Request Letter.

18. On June 30, 2023, C2C issued a "partially favorable" reconsideration decision, allowing coverage for claims associated with five beneficiaries and denying coverage for claims associated with eight beneficiaries. Ex. F: June 30, 2023 C2C Reconsideration Decision.

3668074.2

19.     Progressive Health timely appealed with a request for hearing before an Administrative Law Judge ("ALJ") in accordance with 42 C.F.R. § 405.1002. Ex. G: September 21, 2023 ALJ Hearing Request Letter.

20.     On December 13, 2023 and December 14, 2023, a hearing was held by an ALJ. Ex. H: January 30, 2024 ALJ Notice of Decision, at pg. 10.

21.     On January 30, 2024, the ALJ issued an "unfavorable" decision. Ex. H.

22.     Progressive Health did not receive notice of the ALJ's decision until February 7, 2024, as evidenced by the sworn declaration of Rachel D. Smith, who is in Nashville, Tennessee. Ms. Smith swore, in accordance with 28 U.S.C. § 1746, as follows: "On February 7, 2024, I received the January 30, 2024 OMHA Notice of Decision that was mailed to our Nashville location from the Irvine Field Office located in Irvine, California." Ex. I: April 5, 2024 Request for Medicare Appeals Council Review, at pg. 124. There was no contrary evidence of any kind demonstrating a date of receipt *earlier* than February 7, 2024.

23.     Progressive Health submitted its properly addressed and timely request for appellate review to the Medicare Appeals Council on April 5, 2024 within the 60-day time period from its February 7, 2024 receipt of the ALJ's decision. Ex. I; Ex. J: April 5, 2024 Federal Express first class overnight label.

24.     Federal Express attempted delivery in the District of Columbia on April 6, 2024. However, due to the Appeals Council's refusal to accept delivery on Saturdays or Sundays, as is evident from the highlighted portion of the attached exhibit, the appeal was not *accepted* by the Appeals Council until Monday, April 8, 2024—notwithstanding that the appeal had been physically brought to the Appeal Council's door at Progressive Health's expense on April 6, 2024. Ex. K: Federal Express Tracking Information.

3668074.2

25.     Despite Progressive's timely overnight submission of its appeal on April 5, 2024 with the appeal at the Appeals Council's door on April 6, 2024, the Appeals Council dismissed Progressive Health's request for review as "untimely" almost a year later on March 13, 2025 because the Appeals Council misapplied the rebuttable five-day presumption of 42 C.F.R. § 405.1102(a)(1) by ignoring the "evidence to the contrary" that, as a matter of law, negated the presumption. Ex. L: March 13, 2025 Notice of Order of Dismissal by Medicare Appeals Council.

26.     The Appeals Council's erroneous dismissal of Progressive Health's appeal on improper grounds *was itself untimely* because the Council ignored 42 C.F.R. § 405.1100(c), which provides that the Appeals Council must issue a decision on a request for review within 90 calendar days of receipt of the request for review; and, in dismissing Progressive Health's appeal, the Appeals Council also violated the laws on which this Complaint for judicial review is based.

27.     The Appeals Council's dismissal of Progressive Health's request for review— notwithstanding the timeliness of its appeal—was a final decision by the Secretary, and Progressive Health had exhausted its administrative remedies. 42 C.F.R. § 405.1130; *see* Ex. A through Ex. L (inclusive).  "The decision is final and binding on all parties unless a Federal district court issues a decision modifying the Council's decision or the decision is revised as the result of a reopening in accordance with [42 C.F.R.] § 405.908."

28.     As a result of the appeal of the Appeals Council's erroneous dismissal, this case has previously been before the Court because Progressive Health filed a timely Complaint for Judicial Review requesting that the Court enter an order reversing the Council's dismissal decision and requiring it to address Progressive Health's request for review on the merits. *See Progressive Health & Rehabilitation, Ltd. v. Robert F. Kennedy, Jr.*, Case No.: 1-25-cv-05374, in the United

States District Court for the Northern District of Illinois—Eastern Division ("Progressive Health I").[8]

29.     Progressive Health I was remanded to the Appeals Council for "good cause" on the government's unopposed motion based on the Appeals Council's "interest" in "correcting its own mistakes," *see* <u>Ex. M</u>: Progressive Health I, Defendant's Unopposed Motion to Remand for Further Administrative Proceedings, Doc. 31, p. 3 of 5 (quoting *Doctors Nrsg. & Rehab. Ctr. v. Sebelius (DNRC)*, 613 F.3d 672, 681 (7th Cir. 2010)), and "in the interests of judicial economy, so that the merits of plaintiff's alleged overpayment can be reached by the agency and the administrative process can continue through finality," *see* <u>Ex. M</u>, at p. 4 of 5 (citing Smith v. Berryhill, 587 U.S. 471, 488 (2019)).  The Court's order of dismissal without prejudice states, in pertinent part,

> [T]he Secretary has agreed to review the merits of plaintiff's claims, and this court remands this matter for further administrative proceedings. Upon remand, and after consideration of plaintiff's claims on the merits, the Medicare Appeals Council shall issue a new decision. ***Plaintiff will have the same appeal rights as it would have had and may appeal any new decision from the Medicare Appeals Council to the district court in accordance with the Medicare statute and its regulations***.

<u>Ex. N</u>: Progressive Health I, Order of Dismissal, p. 1 of 2 (emphasis added).

30.     On remand, the Appeals Council vacated its prior dismissal. <u>Ex. O</u>: May 4, 2026 Appeals Council Decision, p. 2. This second appeal is a civil action for judicial review of the "new, independent," and final administrative agency decision regarding Medicare reimbursement rendered by the Secretary. *Id.* The Appeals Council ruled, continuing and compounding the previous errors of the ALJ "that the [statistical sample and overpayment extrapolation] SSOE was

---

[8] *See Anderson v. Biegler GmbH*, No. 24-cv-01603-NYW-SBP, 2025 U.S. Dist. LEXIS 153842, *6-7 (D. Colo. August 8, 2025) ("Rule 201 reflects the longstanding rule that 'federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)).

valid, that the services provided to the eight beneficiaries…did not meet Medicare coverage requirements, and that the appellant is financially liable for the non-covered costs and resultant overpayment." *Id*.

31.     This appeal is timely filed within sixty days after the date the Appeals Council's decision was received by Progressive Health, 42 C.F.R. § 405.1130. The Council's most recent erroneous decision was purportedly mailed on May 4, 2026 and is presumed to have been received within five days of that date—May 9, 2026—per 42 C.F.R. § 405.1136(c)(2). This appeal is therefore *indisputably* timely.

### Standard of Review

32.     The factual findings of the Appeals Council are *only* conclusive if they are supported by *substantial evidence*. 42 C.F.R. § 405.1136(f)(1). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Zachary S. v. O'Malley*, No. 22 C 5910, 2024 U.S. Dist. LEXIS 228233, at *5, *8-9 (N.D. Ill. December 18, 2024) (quoting *Perales*, construing similar language in 42 U.S.C. § 405(g): "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive," but holding that the ALJ's decision was "improperly analyzed" and was "unsupported by substantial evidence," which made the decision "patently wrong."). By definition, then, "substantial evidence" cannot mean a ruling that is patently *contrary* to the evidence, which, as here, requires the opposite of the conclusion reached by the government's contractors, its in-house ALJ, and its Appeals Council and a decision in favor of Progressive Health.

9

33. The standard of review for the Appeals Council's decision is on the issues presented by 5 U.S.C. § 706(2)(A)-(F)—unless and to the extent modified by *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395, 430 (2024) (quoting Henry P. Monaghan, *Marbury and the Administrative State*, 83 Colum. L. Rev. 1, 27 (1983) and *Michigan v. EPA*, 576 U.S. 743, 750 (2015)) (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ("*Chevron* deference" violates the judiciary's "province and duty…to say what the law is.")).

34. The APA scope of review, as stated in 5 U.S.C. § 706, requires a reviewing court to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." Specifically relevant here,

> [T]he reviewing court shall—
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right…;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence…;
> (F) unwarranted by the facts….

5 U.S.C. § 706(2)(A)-(F).

35. A court is also required to review the whole record and take account of "the rule of prejudicial error," which is obviously satisfied here because Progressive Health's substantial rights, including its constitutional right to due process, have been prejudiced by the Appeals Council's violation of *every* subsection of § 706—(A) through (F)—thereby effecting the confiscation by administrative fiat of over $2.7 million dollars. "[T]he role of the reviewing court

10

under the APA is" to "'fix[] the boundaries of [the] delegated authority' and ensur[e] the agency has engaged in '"reasoned decision making"' within those boundaries." *Loper Bright Enters. v. Raimondo*, 603 U.S. at 395 (internal citations omitted).

36. "At its core, the APA 'sets forth the procedures by which federal agencies are accountable to their public and their actions subject to review by the courts.' *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)….The text of the APA states what our *constitutional structure* confirms: *Congress passes law, courts interpret law, and the executive crafts policy within the parameters set by law*. When presented with legal questions under the APA, courts must apply their own judgment without deferring to agency input. *See Loper Bright*, 603 U.S. at 391-92 (explaining that '[t]he APA thus codifies for agency cases [this] unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*')." *Smith v. Wormuth*, No. 1:24-cv-01174-MPB-KMB, 2025 U.S. LEXIS 65340, at *5-6 (D. Ind. March 5, 2025) (emphasis added).

37. The U.S. Constitution *and* the APA establish due process protections for citizens, *inter alia*, during adjudication processes. Administrative agencies violate due process when they frustrate the fairness of proceedings—such as ignoring actual evidence that refutes the articulated, but clearly erroneous and arbitrary, pretext for the dismissal of an appeal.

38. For procedural due process, evenhanded procedures are required where, as here, the outcome is the possible deprivation of "life, liberty or *property*"—specifically, an estimated $2,709,265.00. Substantive due process requires that laws have a reasonable purpose and are fair and just.

39. "Courts afford agencies no deference in interpreting the Constitution. *See U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1231 (10th Cir. 1999) (...'[D]eference to an agency interpretation

3668074.2

is inappropriate not only when it is conclusively unconstitutional, but also when it raises serious constitutional questions.') (*citing, e.g.*, *Rust v. Sullivan*, 500 U.S. 173, 190-91(1991)))….The presence of a Constitutional claim does not take a court's review outside of the APA…§ 706(2)(B) specifically contemplates adjudication of Constitutional issues….)." *Gallegos v. Fed. Emergency Mgmt. Agency*, No. CIV 24-0170 JB/JFR, 2025 U.S. Dist. LEXIS 61377, at *116-117 (D.N.M. Mar. 31, 2025).

40. Judicial review of an agency's compliance with the APA's procedural provisions and the Constitution is conducted *de novo*. *See*, *e.g.*, *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014) ("[A]n agency has no interpretive authority over the APA."); *Emp'r Sols. Staffing Grp. II, L.L.C. v. Off. of Chief Admin. Hearing Officer*, 833 F.3d 480, 484 (5th Cir. 2016) (granting a petition for review of an ALJ's order).

41. Progressive Health has unquestionably exhausted its administrative remedies, and this appeal is ripe for *de novo* review. The Court should hold unlawful and set aside the government's actions, findings, and conclusions and reverse the Appeals Council's decision because it is (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to Progressive Health's constitutional right not to be deprived of property without due process of law; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence; and (f) unwarranted by the facts. A fully favorable decision should be rendered in Progressive Health's favor.

**Progressive Health Is Entitled to the Reversal of the Appeals Council's Decision and to a Fully Favorable Judgment.**

**I.      The *uncontroverted* evidence shows that the SSOE is invalid, unreliable, and does not provide any basis for the extrapolated overpayment demand to Progressive Health.**

42.      The UPIC's invalid SSOE, which is based on an error rate now recognized by even the Appeals Council to be incorrect, has contaminated these entire proceedings like an antibiotic-resistant statistical staph infection.  The MAC ignored the UPIC's erroneous SSOE methodology, as the Appeals Council has now recognized. Ex. O, at p. 3.  The QIC found that claims for services rendered to five of thirteen beneficiaries met Medicare coverage requirements and rendered a "partially favorable" decision, but never directed the recalculation of the alleged overpayment—as the Appeals Council has at least now recognized.

43.      Notwithstanding the numerous obvious errors throughout the administrative process by its contractors and the ALJ, the Appeals Council largely repeats, in its "de novo review" the same rote positions that have been stated at each level in more-or-less formulaic, cut-and-paste decisions and concludes that the SSOE is valid.

44.      Progressive Health's statistical expert, Dr. Ross Mitchell Cox, presented a report and testimony that have not been substantively controverted by any contractor, the ALJ, or the Appeals Council. Instead, following their typical practices in this matter, the contractors and HHS defend their decisions in the same way that they reached them in the first instance—by ignoring the evidence and the law. It is readily apparent at each level of these proceedings that no person or entity operating on behalf of the Secretary has factored into any decision the contractors' failure to follow the Medicare Program Integrity Manual ("MPIM") and that no person has fairly considered, with any understanding, the report and testimony of Dr. Cox. Had they done so, the prior decisions would necessarily have been in Progressive Health's favor in all respects.

13

45. In fact, in the hearing, the ALJ himself candidly admitted, **"I really don't know *anything* about stat sampling."** Ex. I, at p. 18 (emphasis added). The ALJ's decision included two conclusory paragraphs about statistical sampling, and even those consisted of nothing more than blanket endorsements—invalidated by his own confession of ignorance—of the UPIC's errors and the failures of the MAC and QIC to remedy them. Ex. H, at p. 19.

46. Progressive has shown, without contrary evidence, that (a) the UPIC's sampling plan was not finalized prior to sample selection and medical review or properly documented; (b) the UPIC improperly estimated the gross overpayment rather than net, by failing to audit underpaid service lines; and (c) the UPIC's extrapolation is based on an erroneous formula. Progressive has also consistently demonstrated that the extrapolation is wrong because the one which it is based is not statistically valid and that the determination in specific cases identified by the sample are not correct.

47. Progressive Health has provided, *inter alia*, evidence that challenges the statistical validity of the sample and the correctness of the coverage determinations for the sample claims; has provided evidence that the contractor has failed to provide complete and clear documentation sufficient to explain the actions taken and to replicate the statistical sample; that the sample design was not properly executed; that correct formulas for estimation were not used; that the contractor did not follow one or more of the guideline requirements and that the failure necessarily affected the validity of the statistical sampling that was conducted *and* the projection of the alleged overpayment; has demonstrated an actual error in the methodology that affects the alleged overpayment amount; that the UPIC's determination of error rate was incorrect (now admitted by the Appeals Council); that the sample selection could not be replicated based on the information provided by the UPIC; that the UPIC's failure to finalize its sampling plan prior to sample selection

14

3668074.2

is, in and of itself and by itself, sufficient to render the SSOE invalid; and that the Appeals Council has admitted that the QIC's partially favorable determination did not lead to any recalculation of overpayment by the UPIC.

48.     Despite the "partially favorable" decision by the QIC, the extrapolated $2,709,265.00 overpayment amount has not been withdrawn or adjusted, despite there being no basis for it after the QIC's decision and despite medical necessity being established for each of the claims validated by the QIC, which necessarily reduces the basis for the claims that purportedly underlie the extrapolated demand. The failure to revise the demand is prima facie evidence of error—including error that invalidates the sample and therefore the extrapolation itself.

49.     The failure to revise the demand is a gross failure to address the evidence because the extrapolated demand relies on an assumed denial rate of 76.74%, despite the fact that *subsequent* decisions in the appeals process after the original extrapolated demand have concluded that the effective denial rate was substantially less, at most 59.30%, and, based on the evidence presented to the ALJ (and ignored by the ALJ), that the effective denial rate was substantially lower, at 31.40%.

50.     The Appeals Council does at least acknowledge that the UPIC's initial 76.4% denial rate that the extrapolated overpayment assumed is no longer valid. The Appeals Council has also noted that the record does not contain a recalculated overpayment following the QIC's "partially favorable" determinations on reconsideration. "Thus, to the extent it has not yet done so, the UPIC shall perform such a recalculation based on the QIC's favorable findings, consistent with CMS

---

[9] *See Partners in Care, Inc. v. Kennedy*, No. 6:24-cv-00603-MC, 2025 U.S. Dist. LEXIS 253805, at *21-22 (D. Or. December 3, 2025) (invalidating sample for insufficient documentation, including proof that sampling parameters were not finalized *in advance*, invalidating extrapolation, and providing plaintiff-appellant with complete relief); *see also Hospitals v. Becerra*, No. 2:21-cv-02476-JPM-atc, 2022 U.S. Dist. LEXIS 177329, at *15-18 (W.D. Tenn. September 29, 2022) (vacating Appeals Council's decision on jurisdictional grounds and affirming finding of ALJ that "the OIG conducted a fundamentally flawed statistical extrapolation" because the audit could not be recreated).

Ruling 86-1 and the MPIM." Ex. O, p. 11, p. 23. Therefore, at a minimum, Progressive Health has significantly lowered the total amount of the extrapolated demand if and when the real denial rate is applied.

51.     In any event, as things currently stand, the Appeals Council's ruling, which "adopts the ALJ's decision" and therefore adopts the ALJ's admitted ignorance of statistics,[10] is in error and has corrected nothing. Progressive Health has proven that the UPIC's sampling methodology is statistically invalid and that its overpayment estimate is a grossly incorrect overestimate that is not based on legitimate statistical principles and reliable methodology, not based on proper application of HCFA Ruling No. 86-1 (February 20, 1986), nor based on proper application of the relevant sections of the MPIM—wholly contrary to the self-contradictory assertions of the Appeals Council in its decision. Ex. O.

52.     The Appeals Council's conclusion that the SSOE is "valid," in the face of these errors, the additional errors reflected in the record, and Council's own admissions of the UPIC's and QIC's in its decision shows that the decision is unquestionably arbitrary, capricious, and fundamentally wrong.

**II.     The services rendered by Progressive Health to each beneficiary were medically reasonable and necessary; therefore, they were properly covered by Medicare and there was no "overpayment."**

53.     The claims denied by the Appeals Council continue to be based on the same incorrect findings—completely contrary to the record evidence and testimony—that the beneficiary-patients lacked (1) radiological evidence to support the diagnosis of OA and/or (2) sufficient evidence that they failed to respond adequately to conservative treatments.

---

[10] *See* ¶ 45, *supra*. The ALJ admitted, **"I really don't know *anything* about stat sampling."** Ex. I, at p. 18 (emphasis added).

16

3668074.2

54. Progressive Health submitted all necessary records establishing that the services at issue related to GenVisc 850 (sodium Hyaluronate) or other hyaluronic acid-based products were medically reasonable and necessary.

55. Although the QIC provided a "partially favorable" decision and concluded that services associated with five of the thirteen beneficiaries at issue in Progressive Health's appeal *were* medically reasonable and necessary, the QIC ignored evidence of medical reasonableness and necessity for the remaining eight beneficiaries at issue.

56. With respect to the remaining eight beneficiaries, Progressive Health has established that there is (1) clear radiological evidence to support the diagnosis of osteoarthritis; and (2) documented proof of prior conservative therapy attempts.

57. After a hearing attended only by counsel for Progressive Health and its two expert witnesses and in spite of all of the evidence supporting and validating the claims for the remaining eight beneficiaries, the ALJ nevertheless denied the claims on the same grounds as the QIC had. However, the denial is neither legally valid nor supported by the evidence.

58. Progressive Health's medical expert, Dr. Philip Wilson, is a physician who regularly administers GenVisc treatments to patients. Dr. Wilson has established by report and testimony that the evidence submitted clearly (1) established radiographical support for the diagnoses of osteoarthritis; (2) the diagnoses can be made based on symptoms and complaints; (3) that unsigned or untimely signed x-ray reports, evaluation forms, or notes do not invalidate the proof of osteoarthritis in the underlying imaging results; (4) that each of the patients at issue had confirmed diagnoses of osteoarthritis; (5) and that each of the patients at issue had inadequate responses to conservative treatment. This evidence establishes conclusively that the services were medically

17

necessary and reasonable, and there was no substantially contradictory evidence presented by any contractor or by HHS.

59. The ALJ failed to recognize that Progressive Health provided supporting documentation for seven of the eight beneficiaries' claims, including imaging reports, imaging evaluation forms, imaging orders, and/or references to imaging in other portions of the patients' records, which confirm osteoarthrosis. For the eighth beneficiary, Progressive Health presented evidence that the beneficiary underwent a left knee arthrogram and was diagnosed with unilateral primary osteoarthritis of the left knee following the arthrogram. The only logical conclusion is that osteoarthritis was confirmed via the arthrogram.

60. The medical records establish that (1) each of the beneficiaries at issue had symptoms of knee osteoarthritis; (2) if appropriate, other diagnoses were excluded by appropriate evaluation and management services, laboratory studies, and imaging studies; and (3) none of the patients had evidence of joint effusion as a significant component of symptoms. Dr. Wilson also presented evidence that the records submitted by Progressive Health sufficiently proved conservative treatment attempts had failed, justifying the injections.

61. The Appeals Council has conceded that the records submitted by Progressive prove that each of the remaining beneficiaries in the appeal were (1) symptomatic; (2) other diagnoses had been excluded by appropriate evaluation and management services and various studies; and (3) none of the beneficiaries had evidence of a joint effusion. (pg. 16)

62. For several of the beneficiaries at issue, the Appeals Council actually agreed with us that the version of LCA A52420 effective as of the date of service does not require radiological evidence of OA and/or sufficient radiological evidence was nonetheless supplied. That applies to beneficiaries PB, SC, FD, DL, TR, and PT. Each of those 6 beneficiaries were still denied due to

18

insufficient evidence of inadequate response to conservative treatments, however. But it still narrows the playing field for what we actually need to prove at the federal court level for those six, as we can focus on lack of adequate response to conservative treatments.

63. Claims for beneficiaries LH and NP were denied for both lack of radiological evidence of OA and lack of sufficient evidence of inadequate response to conservative treatment notwithstanding that evidence of both is in the record and was proven at the hearing before the ALJ

64. Progressive Health presented conclusive evidence at all levels of the Medicare appeals process that there was radiological evidence to support the diagnosis of osteoarthritis and the failure of previous conservative treatment attempts, making the services rendered medically necessary, reasonable, and covered by Medicare. The ALJ simply ignored the evidence—as did the contractors at the previous levels of appeal—and as the Appeals Council has done.

65. Progressive Health has proven that it provided services or items economically, of a quality meeting professionally recognized standards of health care, and supported by evidence of medical necessity. *See* 42 U.S.C. § 1320c-5(a).

**III. Progressive Health is not financially liable for any non-covered costs nor for any overpayment.**

66**.** Progressive has repeatedly proven throughout the administrative appeals process that it had a reasonable, good faith basis for believing the services at issue met applicable coverage guidelines. Progressive has also repeatedly proven that it exercised reasonable care, submitted all required documentation, and had a reasonable basis for assuming the payments were correct. As a result, if the services at issue were not covered, the limitation on liability provision under Section 1879 of the Social Security Act applies; and, even if there were some measure of "overpayment," the waiver of recovery of provision under Section 1870 applies. If there were to be any recovery

19

for the Secretary, the recovery bar should be reduced to one year and any alleged "overpayment" should be waived.

67.     As is so often true in cases such as this in which medical has been provided by actual health care providers, and real patients have benefited from their care, the contractors, ALJs, and the Appeals Council attempt to claw-back payments for that care *as if* it had not been provided based on conclusory and arbitrary perfunctory rulings that do not address or engage with the substantive record evidence in any meaningful way.  Rather, HHS simply says the providers were "overpaid" and must return funds that were legitimately received—effectively turning those professionals into involuntary providers of *pro bono* care by imposing a form of administrative confiscation.  The only consistency across these matters is that the providers cannot win—not because the administrative process itself violates due process—but because the government and its contractors are consistently allowed to ignore evidence that is of record, pretending it's not there, and to claim in perfunctory rulings that the providers have not met their burdens of proof.

### Relief Requested

Because the Secretary's decision is not supported by substantial evidence *actually* in the record and because the decision is not supported by the appropriate legal standards, Progressive Health requests that the Court enter judgment in its favor and against the Secretary as follows:

1.     Holding that the Appeals Council violated Title XVIII of the Social Security Act, codified at 42 U.S.C. §§ 1395 *et seq*.;

2.     Holding that the Appeals Council's decision is unlawful and set aside the Appeals Council's action as an agency action, finding, and conclusion that was (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to Progressive Health's constitutional rights; (C) in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence; and (F) unwarranted by the facts in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(F);

3. Holding that the Appeals Council's ruling is in violation of Progressive Health's Fifth Amendment right under the U.S. Constitution not to be deprived of property without due process of law;

4. Reversing the Appeals Council's decision in all respects and rendering judgment in Progressive Health's favor with a determination that all of the Medicare claims that are the subject of this appeal were evidenced to be reasonable and medically necessary and that the statistical sampling and extrapolation by the UPIC are invalid and of no force and effect thereby negating the overpayment demand against Progressive Health;

5. Finding that all of the Medicare claims by Progressive Health are, and were, properly covered by Medicare and therefore properly paid or payable as the case may be;

6. Finding that, if Progressive Health is liable for any overpayment at all, it is liable for no more than an actual overpayment received, which would be $6,791.33 or less.

7. Finding that if any of the services at issue were not covered, the limitation on liability provision under Section 1879 of the Social Security Act applies;

8. Finding that even if there were some measure of "overpayment," the waiver of recovery of provision under Section 1870 applies and, if there were to be any recovery for the Secretary, the recovery bar should be reduced to one year and any alleged "overpayment" should be waived; and

9. Providing to Progressive Health any and all other, different, and additional relief as the Court may award under law or in its discretion.

21

3668074.2

Respectfully submitted,


s/Richard E. Davis
*Richard E. Davis
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL  35209
Telephone:  (205) 868-6000
Facsimile:   (205) 868-6099
rdavis@starneslaw.com

*Alan S. Bean
STARNES DAVIS FLORIE LLP
3000 Meridian Boulevard, Suite 350
Franklin, TN  37067
Telephone:  (615) 905-7200
Facsimile:  (615) 907-4802
abean@starneslaw.com

-and-

s/Daniel J. Cozzi
Daniel J. Cozzi
Swanson, Martin & Bell, LLP
330 N. Wabash Avenue
Suite 3300
Chicago, IL 60611
Telephone:  (312) 222-8512
Bar No.: 6303107
dcozzi@smbtrials.com

*Attorneys for Plaintiff*


*Pro Hac Vice pending

22